FILED
IN OPEN COURT

15 2026

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA



# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MUNEEB AKHTER<br>a/k/a MICKEY AKHTER<br>a/k/a MUNIB AKHTER,<br><br>Defendant. | Case No. 1:25-CR-307 |

## STATEMENT OF FACTS

The parties stipulate and agree that the allegations in Counts Two, Three, Nine, and Ten of the Superseding Indictment dated January 15, 2026, and the following facts are true and correct, and that had the matter gone to trial, the United States would have proven them beyond a reasonable doubt:

1.      Defendant MUNEEB AKHTER, who also went by MICKEY AKHTER and MUNIB AKHTER, resided with his brother, SOHAIB AKHTER, in the Eastern District of Virginia from at least in or around 2022 until on or about February 24, 2025. After on or about February 24, 2025, MUNEEB AKHTER temporarily resided in the Northern District of Texas, and then in the District of Utah, and made multiple trips back to the Eastern District of Virginia. Defendant MUNEEB AKHTER had previously been convicted of Access of a Protected Computer Without Authorization, in violation of Title 18, United States Code, Section 1030(a)(2)(C) and (c)(2)(B)(i), (iii), among other offenses, on June 26, 2015, in the United States District Court for the Eastern District of Virginia.

2. MUNEEB AKHTER was employed by Company-1 from on or about October 2, 2023, until he was fired on February 18, 2025. He lived and worked with his brother, SOHAIB AKHTER, who was employed by Company-1 from on or about March 27, 2024, until February 18, 2025.

3. Company-1 was a company headquartered in Washington, D.C. Company-1 provided software products and services to more than 45 United States federal government agencies. Company-1 hosted data for some federal government clients on servers located in Ashburn, Virginia. Other federal government clients used Company-1's software but hosted their data on their own servers.

4. The United States Equal Employment Opportunity Commission (EEOC) was a federal agency located in Washington, D.C. The EEOC was a customer of Company-1 and hosted data on Company-1's servers.

5. The United States Department of Homeland Security (DHS) was a federal agency located in Washington, D.C. The DHS was a customer of Company-1 and hosted data on Company-1's servers.

6. The United States Internal Revenue Service (IRS) was a federal agency located in Washington D.C. The IRS was a customer of Company-1 and hosted data on Company-1's servers.

7. Company-1 organized a Microsoft Teams meeting at approximately 4:45 p.m. on February 18, 2025, which both MUNEEB AKHTER and SOHAIB AKHTER attended from their shared residence. Both MUNEEB AKHTER and SOHAIB AKHTER were terminated by Company-1, effective immediately, during this Microsoft Teams meeting.

8. Following their termination from Company-1 on February 18, 2025, MUNEEB AKHTER and SOHAIB AKHTER sought to harm Company-1 and its U.S. government customers by accessing computers without authorization, deleting databases, and destroying evidence of their unlawful activities. When MUNEEB AKHTER did not know the database commands necessary to accomplish his unlawful objectives, he used an artificial intelligence tool to help him. After deleting databases and event logs, MUNEEB AKHTER later tampered with database logs on virtual machines hosting U.S. government information. MUNEEB AKHTER and SOHAIB AKHTER reinstalled the operating systems on the Company-1 laptops to which they had been previously assigned, and concealed evidence, in attempts to prevent the analysis of the Company-1 laptops and hamper the investigation into their criminal activities.

9. On February 18, 2025, at approximately 4:55 p.m. and approximately five minutes after being fired by Company-1, SOHAIB AKHTER told MUNEEB AKHTER that SOHAIB AKHTER's VPN was disconnected and he could no longer access the Company-1 network. MUNEEB AKHTER accessed Company-1's computer network without authorization and told SOHAIB AKHTER he was still connected to the network.

10. On February 18, 2025, between approximately 4:56 p.m. and 5:52 p.m., MUNEEB AKHTER deleted approximately 96 databases storing U.S. government information that were hosted by Company-1. Many of these databases contained records and documents related to Freedom of Information Act matters administered by federal government departments and agencies, as well as sensitive investigative files of federal government departments and agencies.

11. On February 18, 2025, at approximately 4:56 p.m., MUNEEB AKHTER accessed a government agency's database on a Company-1 server, issued commands to prevent other

users from connecting or making changes to the database, and then issued a command to delete the database.

12.     On February 18, 2025, at approximately 4:58 p.m., MUNEEB AKHTER issued commands that deleted a DHS production database containing U.S. government information. The database was hosted on a Company-1 server in the Eastern District of Virginia.

13.     On February 18, 2025, at approximately 4:59 p.m., MUNEEB AKHTER asked an artificial intelligence tool, "how do i clear system logs from SQL servers after deleting databases."

14.     On February 18, 2025, at approximately 5:07 p.m., after SOHAIB AKHTER and MUNEEB AKHTER realized that SOHAIB AKHTER's virtual private connection (VPN) had been disabled, SOHAIB AKHTER asked MUNEEB AKHTER how he still had access to the network and what his plan was. SOHAIB AKHTER later stated, "I see you cleaning out their database backups." The brothers then discussed which databases were being deleted, and SOHAIB AKHTER suggested seeing whether his account still had any access.

15.     On February 18, 2025, at approximately 5:07 p.m., MUNEEB AKHTER said, "They're looking at you, they're not looking at me." SOHAIB AKHTER then asked if MUNEEB AKHTER was deleting databases associated with a specific Company-1 product. SOHAIB AKHTER then said, "You gonna RDP into their systems and delete all their [stuff]."

16.     As the brothers continued to look at MUNEEB AKHTER's computer while databases were being deleted, SOHAIB AKHTER and MUNEEB AKHTER discussed the ramifications of deleting customer databases. MUNEEB AKHTER continued to delete databases, and SOHAIB AKHTER stated, "Alright, if you have good plausible deniability."

4

17. A few seconds later, MUNEEB AKHTER stated, "Eh, they can recover from yesterday," referring to database backups from the day before. SOHAIB AKHTER stated, "Yeah, they could," to which MUNEEB AKHTER responded, "[A named Company-1 employee] will have some work to do."

18. Then, at about 5:10 p.m., SOHAIB AKHTER said, "Delete their filesystem as well?" to which MUNEEB AKHTER replied, "Smart idea." SOHAIB AKHTER then continued to provide MUNEEB AKHTER with ideas for causing more damage to Company-1. He stated, "DNS names . . . go into the major customers, VA OIG, Ed OIG." MUNEEB AKHTER replied, "DHS was a big one."

19. SOHAIB AKHTER then instructed MUNEEB AKHTER, "Just go into each of them [the databases] and, . . uh, start the delete process. Take its time. It will delete all the files."

20. The brothers then discussed whether to blackmail Company-1. At approximately 5:12 p.m., SOHAIB AKHTER said to MUNEEB AKHTER, "You should have thought about it prior man. . . . you shoulda had a kill script, like, blackmailing them for some money would have been—" to which MUNEEB AKHTER replied, "No, you do not do that, that's proof of guilt man." SOHAIB AKHTER responded, "No, but the thing was, you always have your opinion." The brothers then argued about whether to try to blackmail or communicate with Company-1 customers.

21. On February 18, 2025, at approximately 5:14 p.m., SOHAIB AKHTER stated, "They're gonna probably raid this place," to which MUNEEB AKHTER replied, "Eh, I'll clean this shit up." SOHAIB AKHTER responded, "We also gotta clean stuff up from the other house, man." SOHAIB AKHTER then asked about accessing a bank account and began cleaning out documents.

22.     On February 18, 2025, at approximately 5:15 p.m., SOHAIB AKHTER stated to MUNEEB AKHTER, "Deleting their filesystems would be a harder fix." MUNEEB AKHTER responded, "Mmm-hmm, especially if you clear it out. . . . Everything that I did, I'm making sure that it's protected, that it's clean."

23.     On February 18, 2025, at approximately 5:44 p.m., MUNEEB AKHTER asked an artificial intelligence tool, "how do you clear all event and application logs from Microsoft windows server 2012."

24.     On February 18, 2025, at approximately 6:22 p.m., MUNEEB AKHTER attached a USB drive to a Company-1-owned laptop which had been previously assigned to him.

25.     On February 18, 2025, between approximately 6:22 p.m. and 6:28 p.m., MUNEEB AKHTER copied approximately 1,805 files belonging to the EEOC from the Company-1-owned laptop to the USB drive.

26.     On February 18, 2025, at approximately 6:31 p.m., MUNEEB AKHTER removed the USB drive from the Company-1-owned laptop.

27.     On February 18, 2025, at approximately 11:16 p.m., MUNEEB AKHTER created an archive file called "source.7z," using the Company-1-owned laptop to which he was previously assigned.

28.     On February 20, 2025, between approximately 8:51 p.m. and 8:59 p.m., MUNEEB AKHTER attempted to access a DHS-owned laptop without authorization at least three times.

29.     On or about February 21 and 22, 2025, MUNEEB AKHTER and SOHAIB AKHTER's Company-1-issued laptops were both wiped by re-installing the operating systems.

30. On or about February 24, 2025, MUNEEB AKHTER drove to Texas. He transported his personal laptop, mobile device, and a Personal Identify Verification (PIV) card issued by a U.S. government agency.

31. On or about February 18, 2025, in the Eastern District of Virginia, MUNEEB AKHTER knowingly caused the transmission of a program, information, code, and command, specifically, the command "DROP DATABASE dhsproddb" and, as a result of such conduct, intentionally caused damage without authorization to a protected computer, that is, a computer owned by Company-1 that hosted a database containing information belonging to DHS, such offense occurring after a conviction for another offense under 18 U.S.C. § 1030, in violation of 18 U.S.C. § 1030(a)(5)(A) and (c)(4)(C).

32. On or about February 18, 2025, in the Eastern District of Virginia, the defendant, MUNEEB AKHTER, did intentionally access a computer without authorization and thereby obtained information from a department and agency of the United States, that is, the EEOC, and from a protected computer, that is, a Company-1 computer hosting EEOC information, such offense occurring after a conviction for another offense under 18 U.S.C. § 1030, in violation of 18 U.S.C. § 1030(a)(2)(B), (a)(2)(C), and (c)(2)(C).

33. From at least in and around February 2025 through on or about March 12, 2025, within the Eastern District of Virginia and elsewhere, the defendant, MUNEEB AKHTER, did willfully and knowingly steal, purloin, and convert to his use and the use of another, any record and thing of value of the United States and of any department or agency thereof, to wit: copies of IRS information stored on a virtual machine, including (1) copies of federal tax information and other identifying information of at least 450 individuals, (2) copies of at least 100 reports containing confidential IRS data related to analysis of and weaknesses in other agencies'

safeguards for federal tax information, and (3) copies of hundreds of Freedom of Information Act requests.

34. On or about August 15, 2022, in the Eastern District of Virginia, defendant MUNEEB AKHTER knowingly possessed and used, without lawful authority, a means of identification of another actual person, including but not limited to the name, date of birth, Social Security number, and passport of Victim-2.

35. At least as early as in and around May 2025, and continuing through December 3, 2025, in the Eastern District of Virginia and elsewhere, the defendant MUNEEB AKHTER, did knowingly and with the intent to defraud, having devised and intending to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, transmit and caused to be transmitted, by means of wire communications in interstate and foreign commerce, writings, signs, signals, and sounds for the purpose of executing such scheme and artifice, in violation of 18 U.S.C. § 1343.

36. The purpose of the scheme to defraud was for MUNEEB AKHTER to (1) steal valid usernames and passwords for the EEOC Public Portal, a web application developed and maintained by Company-1; (2) fraudulently use these stolen credentials without authorization to attempt to access and access email and other online accounts of victims using the stolen credentials (i.e., accounts that used the same password for web applications other than the EEOC Public Portal); (3) unlawfully use information obtained from the victims' various online accounts for their own personal benefit; and (4) conceal the scheme.

37. MUNEEB AKHTER transferred approximately 5,400 usernames (email addresses) and passwords from the Company-1 network, including the email address and password of Victim-3, Victim-4, and Victim-5, to computers he controlled. He stored copies of

the stolen usernames and passwords on his personal laptop, on his personal Android phone, on an external hard drive, and in another cloud account he controlled. He also possessed a file containing approximately 1.2 million lines of full names, email addresses, phone numbers, addresses, and password hashes.

38. MUNEEB AKHTER used the list of usernames and passwords, which he reformatted in a file named "passwords.txt," to attempt to log into various websites where the victims may have accounts. In hundreds of instances, he successfully logged in to victims' email accounts without authorization.

39. MUNEEB AKHTER created and used Python scripts, including one named "marriott_checker.py," to test these credentials against the website of Marriott, a U.S.-based hotel chain.

40. Without authorization, MUNEEB AKHTER logged in to online airline, hotel, and bank accounts belonging to victims, in order to enrich himself. For example, between in or around April 2025 and December 3, 2025, MUNEEB AKHTER accessed or attempted to access victims' accounts with the following companies:

    a. Company-2 (Marriott), Company-3, and Company-4, U.S.-based hotel chains, and Company-5, a UK-based hotel chain.

    b. Company-6 (American Airlines), Company-7, Company-8, and Company-9, all U.S.-based airlines.

    c. Company-10, Company-11, Company-12, Company-13, Company-14, Company-15, Company-16, and Company-17, all U.S.-based financial institutions.

41. In multiple instances, after successfully logging into a victim's airline, hotel, financial, or other online account without authorization, MUNEEB AKHTER changed the email

address associated with the online account to a new email address created by MUNEEB AKHTER, such as "[Victim Name]@wardensys.com," which appeared to belong to the victim. He created multiple email accounts designed to appear to belong to victims using wardensys.com and wardensystems.com, domains he controlled. The following are a few examples of MUNEEB AKHTER's conduct in relation to his scheme:

a. On or about February 1, 2025, MUNEEB AKHTER asked SOHAIB AKHTER for the plaintext password of Victim-3, which SOHAIB AKHTER provided. MUNEEB AKHTER used the plaintext password to access Victim-3's email account without authorization. He again attempted to access Victim-3's email account without authorization on or about May 12, 2025.

b. On or about November 27, 2025, MUNEEB AKHTER accessed Victim-5's email account and other online accounts, including Victim-5's American Airlines account. MUNEEB AKHTER changed the email address on Victim-5's American Airlines account to [Victim-5]@wardensys.com, which he controlled, and booked an airline ticket for 29,000 American Airlines miles from Salt Lake City to Washington Reagan in his true name. He traveled to the Eastern District of Virginia using this ticket on November 29, 2025. MUNEEB AKHTER also accessed other online accounts belonging to Victim-5 and conducted open-source reconnaissance on Victim-5 using people search websites.

c. On or about December 1, 2025, MUNEEB AKHTER accessed Victim-4's email account without authorization. He then accessed Victim-4's American Airlines and Delta Airlines accounts without authorization. Without authorization, MUNEEB AKHTER then used 14,500 of Victim-4's American Airlines miles to

10

book a flight for the next day, December 2, 2025, from Washington Reagan to Salt Lake City in his true name. MUNEEB AKHTER did not travel on this flight.

42. On or about December 1, 2025, within the Eastern District of Virginia and elsewhere, MUNEEB AKHTER, for the purpose of executing the scheme described above, caused to be transmitted, and aided and abetted the transmission of, by means of wire communication in interstate commerce, writings, signs, signals, pictures, and sounds, that is, an American Airlines online ticket booking made using Victim-4's airline miles, from the Eastern District of Virginia, causing the transmission of an airline ticket confirmation code to the District of Massachusetts, in violation of 18 U.S.C. § 1343.

43. On or about December 1, 2025, within the Eastern District of Virginia, the defendant, MUNEEB AKHTER, for the purpose of executing the scheme described above, caused to be transmitted, and aided and abetted the transmission of, by means of wire communication in interstate commerce, writings, signs, signals, pictures, and sounds, that is, an attempt to login to Victim-5's DocuSign account, from the Eastern District of Virginia, causing the transmission of a two-factor authentication code to the District of Oregon, in violation of 18 U.S.C. § 1343.

44. The acts taken by the defendant, MUNEEB AKHTER, in furtherance of the offenses charged in this case, including the acts described above, were done willfully and knowingly with the specific intent to violate the law. The defendant acknowledges that the foregoing Statement of Facts does not describe all of the defendant's conduct relating to the offenses charged in this case nor does it identify all of the persons with whom the defendant may have engaged in illegal activities.

45.	This Statement of Facts shall be admissible as a knowing and voluntary confession in any proceeding against the defendant, regardless of whether the plea agreement is presented to or accepted by a court. Moreover, the defendant waives any rights that the defendant may have under Fed. R. Crim. P. 11(f), Fed. R. Evid. 410, the United States Constitution, and any federal statute or rule in objecting to the admissibility of the Statement of Facts in any such proceeding.

Todd W. Blanche
Acting Attorney General

By: _____
Vanessa Strobbe
Assistant United States Attorney


A. Tysen Duva
Assistant Attorney General
Criminal Division

By: _____
George Brown
Stefanie Schwartz
Trial Attorneys
Computer Crime and Intellectual Property Section

## Defendant's Stipulation and Signature

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, MUNEEB AKHTER, the United States Attorney's Office for the Eastern District of Virginia, and the Department of Justice's Computer Crime and Intellectual Property Section, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

Date: _____4/15/2026_____      _____
                                    MUNEEB AKHTER
                                    Defendant

## Defense Counsel's Signature

We are Daniel Goldman and Joni Robin, the attorneys for MUNEEB AKHTER. We have carefully reviewed the above Statement of Facts with him. To our knowledge, his decision to stipulate to these facts is informed and voluntary.

Date: _____4/15/26_____      _____
                                    Daniel Goldman
                                    Counsel for the Defendant

Date: _____4/15/24_____      _____
                                    Joni Robin
                                    Counsel for the Defendant