IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MUNEEB AKHTER<br>a/k/a MICKEY AKHTER<br>a/k/a MUNIB AKHTER,<br><br>Defendant | Case No. 1:25-cr-307 (RDA) |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on *pro se* Defendant Muneeb Akhter's ("Defendant") Motion to Declare Breach of Plea or Plea Deficiency, which the Court has construed as a motion to withdraw his plea. Dkt. 175 ("Motion to Withdraw"). The matter is now fully briefed and ripe for disposition. Dkts. 186 ("Opposition"), 194 ("Reply"). On October 28, 2026, this Court heard oral argument on the Motion to Withdraw. For the reasons stated from the bench and for the reasons set forth below, the Motion to Withdraw is DENIED.

## I. BACKGROUND

In 2015, Defendant and his brother, Sohaib Akhter ("S. Akhter"), were convicted of various computer crimes in this District. *See United States v. Akhter, et al.*, No. 1:15-cr-124 (E.D. Va.) ("2015 Conviction"). After both pled guilty, Defendant was sentenced to thirty-nine months of imprisonment and three years of supervised release for his convictions for: (i) conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349; (ii) conspiracy to access a protected computer

without authorization, in violation of 18 U.S.C. § 371 (two counts); (iii) access of a protected computer without authorization, in violation of 18 U.S.C. § 1030(a)(2)(C) and (c)(2)(B)(i), (iii); (iv) false statements, in violation of 18 U.S.C. § 1001(a)(2); and (v) obstruction of justice, in violation of 18 U.S.C. §§ 1503 and 3147(l). *See* 2015 Conviction, Dkt. 83. S. Akhter was sentenced to twenty-four months of imprisonment and three years of supervised release for the three conspiracy counts. *See* 2015 Conviction, Dkt. 85.

On November 13, 2025, a federal grand jury returned an Indictment against Defendant and S. Akhter. Dkt. 1. A Superseding Indictment was returned on January 15, 2026. Dkt. 41. The Superseding Indictment charged Defendant with conspiracy, two counts of computer fraud, theft of government records, three counts of aggravated identity theft, two counts of wire fraud, and access device fraud. *Id.*

On April 15, 2026, the Court held a hearing that lasted over an hour and provided Defendant with approximately 65 minutes to speak with his brother and codefendant, S. Akhter, as well as Defendant's two attorneys. *See* Dkt. 72 (stating that Court was in session on this matter from 11:07 a.m. to 11:25 a.m. and again from 12:30 p.m. to 1:23 p.m.). During the 65-minute recess, and after consultation with his attorneys, Defendant signed the Plea Agreement and a 13-page Statement of Facts, in which he admitted to deleting approximately 96 databases storing United States ("U.S.") government information in February 2025 (Dkt. 74 ¶ 10) and to conducting searches about deleting database logs (*id.* ¶ 13). He drove from Alexandria to Texas six days later. *Id.* ¶ 30. Defendant also admitted to copying approximately 1,805 files belonging to the Equal Employment Opportunity Commission (the "EEOC") to a USB drive. *Id.* ¶ 25. He admitted to possessing and using the name, date, social security number, and passport of Victim-

2 in August 2022 (*id.* ¶ 34) and to engaging in a wire fraud scheme in 2025 in which he transferred approximately 5,400 valid usernames and passwords for an EEOC web application and then used those credentials to attempt to access email and other online accounts of victims for his personal benefit (*id.* ¶¶ 36-37).

After the 65-minute recess concluded, the Court conducted a thorough Rule 11 plea colloquy with Defendant, who answered under oath. *See* Dkt. 139. The Court first assured itself that Defendant was satisfied with the services of his counsel. *Id.* at 15:9-17. The Court confirmed that Defendant intended to enter a plea of guilty. *Id.* at 18:17-19. The Court again asked whether Defendant was satisfied with his counsel. *Id.* at 19:16-18. The Court reviewed the elements of the offenses to which Defendant was pleading guilty, advised him of the penalties associated with such offenses,[1] and discussed the role of the sentencing guidelines. *Id.* at 20:11-23:19. The Court confirmed that Defendant himself had decided to enter his plea of guilty, that such plea was knowing and voluntary, that he was entering the plea because he was guilty, and that no promises had been made to him outside of those in the Plea Agreement. *Id.* at 23:20-24:22. Indeed, the Court took special efforts to confirm that no additional promises had been made to Defendant outside of what was in the Plea Agreement. *Id.* at 24:23-25:6. The Court then reviewed the rights Defendant would be waiving, the provisions of the Plea Agreement, the

[1] Although he was represented by competent counsel who had filed motions with respect to the pending charges, Defendant filed a *pro se* "Motion to Reclassify Counts 2 and 3 or Specify Loss" ("Motion to Reclassify"). Dkt. 67. In his Motion to Reclassify, Defendant made the same arguments he raises now – that the maximum punishment for Counts 2 and 3 should be one year. *Id.* Defendant later withdrew his Motion to Reclassify and, when the Court informed him of the maximum penalties applicable to Counts 2 and 3 during the plea colloquy (which were also set forth in the Plea Agreement), Defendant neither questioned those penalties nor asserted that they were incorrect. Defendant later withdrew his seven pretrial motions (Dkts. 81-87). Dkt. 93.

Government's *prima facie* case, and counsel's interactions with Defendant. *Id.* at 25:7-44:8. The Court also again confirmed Defendant's understanding of the operation of the sentencing guidelines. *Id.* at 25:22-26:6. The Court confirmed that Defendant wanted to enter a plea of guilty and that Defendant had no questions for counsel or the Court. *Id.* at 44:23-45:20. Upon completion of this thorough Rule 11 plea colloquy with Defendant, the Court then accepted Defendant's plea. *Id.* at 45:21-46:9.

In conjunction with the plea colloquy, Defendant also signed a Plea Agreement and Statement of Facts. Dkts. 73-74. The Plea Agreement specifically set forth the counts to which Defendant was pleading guilty and the maximum penalties applicable to each of those offenses. Dkt. 73 ¶ 1. The Plea Agreement set forth that there was a presumption of detention pending sentencing. *Id.* ¶ 2. It also provides that "defendant is satisfied that the defendant's attorney has rendered effective assistance." *Id.* ¶ 4. The Plea Agreement advises, as the Court did during the plea colloquy, that "[t]he defendant understands that the Court has not yet determined a sentence and that any estimate of the advisory sentencing range under the U.S. Sentencing Commission's Sentencing Guidelines Manual that the defendant may have received from the defendant's counsel, the United States, or the Probation Office is a prediction, not a promise, and is not binding on the United States, the Probation Officer, or the Court." *Id.* ¶ 5. That paragraph further explicitly provides: "The United States makes no promise or representation concerning what sentence the defendant will receive, and the defendant cannot withdraw a guilty plea based upon the actual sentence." *Id.* The Plea Agreement reflects that the parties agreed to the application of certain guideline provisions—the amount of loss not among them—and also agreed that, outside of those provisions specifically delineated, "[t]he United States and the defendant have not agreed on any

further sentencing issues." *Id.* Moreover, the Plea Agreement specifically recognizes that there has been no determination as to the losses of the victims. *Id.* ¶ 11. Just above his signature, Defendant acknowledges:

> I hereby agree that I have consulted with my attorney and fully understand all rights with respect to the pending criminal Indictment. Further, I fully understand all rights with respect to 18 U.S.C. § 3553 and the provisions of the Sentencing Guidelines Manual that may apply in my case. I have read the Plea Agreement and carefully reviewed every part of it with my attorney. I understand this agreement and voluntarily agree to it.

*Id.* at 14.

A few weeks later, Defendant filed a motion to withdraw his plea and to proceed *pro se*. Dkts. 116-117, 127-128. After further consultation with counsel, Defendant "expressed his desire to withdraw the referenced documents, persist in his plea of guilty, and proceed to sentencing with undersigned counsel." Dkt. 137.

Despite the references in his Plea Agreement to detention pending sentencing being the presumption, Defendant later sought a bond hearing and again sought to proceed *pro se*. Dkts. 152, 157. On September 2, 2026, the Court conducted a *Faretta* hearing and, following that colloquy, granted Defendant's Motion to Withdraw Counsel and Proceed *Pro Se*. Dkts. 173, 181.

On September 10, 2026, Defendant filed the pending Motion to Withdraw. Dkts. 175-176. The Court directed the Government to respond. Dkt. 180.

On September 24, 2026, Defendant filed his Motion for Joinder with his brother, S. Ahkter, and his Motion for New Joint Trial. Dkts. 182-183.

On September 30, 2026, the Government filed its Opposition. Dkt. 186.

Defendant subsequently filed requests to present the recording of his proffer session and to subpoena witnesses. Dkts. 189, 191.

On October 5, 2026, Defendant filed his Reply. Dkt. 194.

The Court granted-in-part and denied-in-part Defendant's requests regarding the proffer session and witnesses. Dkts. 196, 199. The Government subsequently submitted the proffer session recording to the Court, which has reviewed it.

On October 28, 2026, the Court heard oral argument on the pending Motion to Withdraw. Dkt. 205.

## II. LEGAL STANDARD

As the Fourth Circuit has held, "[a] defendant has no absolute right to withdraw a guilty plea." *United States v. Bowman*, 348 F.3d 408, 413 (4th Cir. 2003). Rather, once the district court has accepted a guilty plea, it is within the district court's discretion to determine whether to permit the defendant to withdraw his plea. *See* Fed. Crim. P. 11(d)(2)(B). The defendant bears the burden of showing a "fair and just reason" for withdrawing his guilty plea. *Id.* The Fourth Circuit has held that "[t]he most important consideration in resolving a motion to withdraw a guilty plea is an evaluation of the Rule 11 colloquy at which the guilty plea was accepted." *Bowman*, 348 F.3d at 414. Essentially, a "fair and just reason" is one that "challenges . . . the fairness of the Rule 11 proceeding." *United States v. Lambey*, 974 F.2d 1389, 1394 (4th Cir. 1992). A properly conducted Rule 11 guilty plea colloquy leaves a defendant with a very limited basis upon which to have his plea withdrawn and "raise[s] a strong presumption that the plea is final and binding." *Bowman*, 348 F.3d at 414.

To assist district courts in determining whether to allow a defendant to withdraw his guilty plea, the Fourth Circuit has established a six-factor test:

> (1) whether the defendant has offered credible evidence that his plea was not knowing or not voluntary; (2) whether the defendant has credibly asserted his

> legal innocence; (3) whether there has been a delay between the entering of the plea and the filing of the motion; (4) whether defendant has had close assistance of competent counsel; (5) whether withdrawal will cause prejudice to the government; and (6) whether it will inconvenience the court and waste judicial resources.

*United States v. Moore*, 931 F.2d 245, 248 (4th Cir. 1991). The Fourth Circuit has held that, "[a]lthough all of the *Moore* factors should be considered, the first, second, and fourth are the most important factors in making the determination of whether to allow withdrawal of the plea." *United States v. Andaya*, 606 F. App'x 722, 723 (4th Cir. 2015) (per curiam). A court "may also consider other circumstantial factors that relate to whether the defendant has advanced a fair and just reason." *United States v. Nicholson*, 676 F.3d 376, 384 (4th Cir. 2012).

## III. ANALYSIS

As Defendant acknowledges in his filings: "I accepted my guilt, took a fairly reasonable plea, earning responsibility credit for my sentencing." Dkt. 190; *see also* Dkt. 175 (seeking to "renegotiate the plea properly"). And, at the October 28, 2026 hearing, Defendant noted his own high regard for his former counsel. Moreover, a review of the plea colloquy and Defendant's filings reveals that the plea colloquy conducted with Defendant was thorough, fair, and informed Defendant of the consequences of his guilty plea, the possible punishments to which he could be subjected, and the rights which he waived. An analysis of all six *Moore* factors also compels the conclusion that Defendant has failed to demonstrate a "fair and just reason" for the withdrawal of his guilty plea. Accordingly, Defendant's Motion to Withdraw will be denied.

With respect the first *Moore* factor, Defendant has not offered any evidence that his guilty plea was not knowing and voluntary. Defendant was specifically asked whether he understood the rights that he would be waiving and whether he was pleading guilty "freely and of [his] own choosing" and because he is, in fact, guilty. Dkt. 139 at 24:1-7. The Plea Agreement and the

Court's plea colloquy also made clear that the Court had made no determination regarding any guideline calculations and that any such calculations would be determined at sentencing after Defendant had the opportunity to object. Dkt. 73 at 14; Dkt. 139 at 25-26.

Defendant's primary argument in this regard was that he understood there to be an "implicit promise" that the loss amount at sentencing would be consistent with Defendant's expectations. This argument fails in two regards. First, there has been no calculation of the applicable loss amount, because, as the Court advised Defendant in the Rule 11 plea colloquy (Dkt. 139 at 25-26), such determination will occur at sentencing after a recommendation from the probation officer and the parties' opportunity to object. Second, Defendant's unsworn argument in this regard contradicts his sworn statements during the plea colloquy and his written admissions in the Plea Agreement. In the plea colloquy, Defendant averred, under oath, that no one had made any promises to him that were not contained within his Plea Agreement. Dkt. 139 at 25:4-6 ("The Court: . . . Have any promises been made to you by any person regarding your determination to enter this plea of guilty? M. Akhter: No, Your Honor."). And, the Plea Agreement explicitly states, just above Defendant's signature, that "I fully understand all rights with respect to 18 U.S.C. § 3553 and the provisions of the Sentencing Guidelines Manual that may apply in my case." Dkt. 73 at 14; *id.* ¶ 5 (agreeing that determinations regarding the application of the guidelines "will be made by the Court at sentencing"). Case precedent further supports that a defendant's error regarding the loss amount does not entitle him to withdraw his guilty plea. *See also Brady v. United States*, 397 U.S. 742, 757 (1970) ("A defendant is not entitled to withdraw his plea merely because he discovers long after that plea has been accepted that his calculus misapprehended the quality of the [government's] case or the likely penalties attached to alternative courses of

action."); *see United States v. Cohen*, 459 F.3d 490, 495 (4th Cir. 2006) (rejecting defendant's argument that the government breached plea agreement by advocating that defendant was responsible for far higher losses). Thus, the first *Moore* factor weighs against permitting Defendant to withdraw his guilty plea.

The second *Moore* factor likewise weighs against withdrawal of Defendant's guilty plea. To begin with, it is unclear on what counts Defendant contends that he is innocent. In his filings, he concentrated on Counts 2 and 3; yet, at the October 28, 2026 hearing, he argued primarily Count 10. Defendant made no argument that he was innocent of Count 9. Count 10 was charged as an attempt to commit wire fraud. Dkt. 41 at 18. As set forth in the Statement of Facts, which Defendant both signed and then reaffirmed was correct during the plea colloquy: (i) from May to December 2025, Defendant "knowingly and with the intent to defraud" devised a scheme to defraud; (ii) where the purpose of the scheme was to steal credentials, usernames, and passwords and then use the stolen information for his own personal benefit; and (iii) as part of that scheme, Defendant attempted to log in to Victim-5's DocuSign account causing the transmission of a two-factor authentication code. Dkt. 73 ¶¶ 35-44. Defendant "challenge[d] the government" to identify the thing of value that Defendant tried to obtain through the DocuSign account. But the value lay in the access itself: by gaining access to the DocuSign account, Defendant would be able to sign and verify documents, including financial documents, as though he were the victim. Moreover, as the Fourth Circuit has made clear the "essential elements of a wire fraud offense are '(1) the existence of a scheme to defraud and (2) the use of . . . a wire communication in furtherance of the scheme.'" *United States v. Jefferson*, 674 F.3d 332, 366 (4th Cir. 2012). Facts supporting those elements are set forth clearly in the Statement of Facts. Thus, to the extent that Defendant

attempts to assert that he is legally innocent of Count 10, the facts set forth in the Statement of Facts and Defendant's admissions in the plea colloquy establish otherwise.

Defendant's argument with respect to Counts 2 and 3 is a legal argument that the Government failed to establish all of the elements necessary for those counts. Count 2 charges a violation of 18 U.S.C. §§ 1030(a)(5), (c)(4)(C)(i) and Count 3 charges a violation of 18 U.S.C. §§ 1030(a)(2), (c)(2)(C). With respect to Count 2 (as set forth in the Plea Agreement and at the plea colloquy), the penalties set forth in Section 1030(c)(4)(C)(i) provide for "a fine under this title, imprisonment for not more than 20 years, or both, in the case of – (i) an offense or an attempt to commit an offense under subparagraph (A) or (B) of subsection (a)(5) that occurs after a conviction for another offense under this section." 18 U.S.C. § 1030(c)(4)(C)(i). As established in 2015 Conviction and in the Statement of Facts, Defendant has previously been convicted of an offense under Section 1030. *See United States v. Akhter*, 1:15-cr-124, Judgment in a Criminal Case, entered on October 2, 2015, Dkt. 83 (E.D.Va.) (defendant convicted of a violation of 18 U.S.C. § 1030(a)(2)(C) and (c)(2)(B)(i), (iii)). Thus, neither Section 1030(a)(5) nor Section 1030(c)(2)(C)(i) require that the Government establish damages of $5,000 or more. Similarly, with respect to Count 3 (as set forth in the Plea Agreement and at the plea colloquy), the penalties set forth Section 1030(c)(2)(C) provide for "a fine under this title or imprisonment for not more than ten years, or both, in the case of an offense under subsection (a)(2), (a)(3), or (a)(6) of this section which occurs after a conviction for another offense under this section, or an attempt." 18 U.S.C. § 1030(c)(2)(c). As discussed *supra*, Defendant's 2015 Conviction was an offense under Section 1030. Thus, a threshold loss of $5,000 was not part of the elements that the Government

had to prove.[2]

In one of his filings, Defendant acknowledges that his arguments do not render him innocent of the charges to which he pled guilty. *See* Dkt. 200 ("18 U.S.C. § 1030(c)(4), (A) lists a bunch of thresholds applied to (B) ***but not to*** (C) under the clause 'occurs after the conviction for another offense'" (emphasis added)). Thus, Defendant concedes that the threshold amounts do not apply where, as here, Defendant has been convicted of another offense. Defendant's citation to *United States v. Mims*, 992 F.3d 406 (5th Cir. 2021), also does not alter the Court's conclusion in this regard. Dkt. 194. In *Mims*, the Fifth Circuit addressed a supervised release violation by a defendant and recognized in a footnote that the "maximum term for Mims's access-device-fraud offense was 10 years *because it did not occur* after a conviction for another offense under 18 U.S.C. § 1029." *Mims*, 992 F.3d at 409 (emphasis added). Thus, the *Mims* decision is inapposite because it addressed a supervised release violation – not a new charged offense – and because it explicitly acknowledged that the crime addressed did not occur after the a prior conviction.

Defendant also had close assistance of counsel with respect to his plea. Defendant's attorneys – Daniel Goldman and Joan Robin – are well known to the Court and are experienced

---

[2] This is further supported by the fact that, when setting forth the elements of an offense under Section 1030, Courts of Appeals do not list the $5,000 threshold loss. *See United States v. Auernheimer*, 748 F.3d 525, 533 (3rd Cir. 2014) (listing elements); *United States v. Willis*, 476 F.3d 1121, 1125 (10th Cir. 2007) (same). Moreover, in *United States v. Umeti*, 167 F.4th 687 (4th Cir. 2026), the Fourth Circuit described the loss amount as a "sentencing enhancement" (and not an element of the offense). *Id.* at 699. There, the defendant was not convicted after a conviction for another offense under this section, so the threshold loss amount did play a role in sentencing, but the Fourth Circuit only remanded for resentencing where the Government could not establish that loss amount; it did not vacate the conviction. *Id.* at 699-700. Accordingly, even if Defendant was correct (which he is not), his argument would not support that he is innocent of Counts 2 or 3.

and competent counsel. Defendant acknowledged multiple times during the plea colloquy that he was satisfied with his counsel and that he had no further questions for his counsel or the Court and his counsel set forth, without objection by Defendant, the efforts that they had made to review the plea and Plea Agreement with him. Dkt. 139 at 15:9-18; *id.* at 19:16-18; *id.* at 45:14-20; *id.* at 25:7-21. Furthermore, at the October 28, 2026 hearing, Defendant asserted that he respects Mr. Goldman and Ms. Robin and that he highly regards them. Rather, he argued that he had an "implicit understanding" of the plea. He asserted that he believed he would have an opportunity to object to the presentence investigation report and the loss calculation. Defendant will have an opportunity to do so, but the time has not yet come. Thus, Defendant had the close assistance of counsel in this regard, and his arguments regarding an implicit understanding and the time to challenge the presentence investigation report does not undermine that close assistance.

With respect to the remaining *Moore* factors, the Court does not find that there was any bad faith delay on the part of Defendant. On the other hand, regardless of the delay, withdrawal would cause prejudice to the Government, inconvenience the Court, and waste judicial resources because there has already been a trial with respect to Defendant's codefendant and proceeding to trial with respect to this Defendant would require the presentation of the same evidence and witnesses. In short, the only *Moore* factor that does not conclusively weigh in favor of denying Defendant's Motion to Withdraw is that the Court finds that there has been no delay by Defendant. But the fact that Defendant acted in a somewhat timely fashion is not sufficient, standing alone, to warrant withdrawal of his guilty plea.

## IV. CONCLUSION

Accordingly, it is hereby ORDERED that Defendant's Motion to Withdraw (Dkt. 175) is DENIED; and it is

FURTHER ORDERED the motions filed prior to Defendant's guilty plea (Dkts. 39, 46, 47, 62, 63, 64, 65, 66, 67) are DENIED as MOOT in light of his guilty plea; and it is

FURTHER ORDERED that the following motions (Dkts. 81, 82, 83, 84, 85, 86, 87) are WITHDRAWN pursuant to the Notice to Withdraw (Dkt. 93); and it is

FURTHER ORDERED that, based on the disposition of the Motion to Withdraw, Defendant's related motions (Dkts. 182, 183, 200) are DENIED as MOOT.

IT IS SO ORDERED.

Alexandria, Virginia
November 4, 2026

/s/
Rossie D. Alston, Jr.
United States District Judge